

## IN THE

# Court of Appeals of Indiana

Patrick Hawkins,

*Appellant/Plaintiff*



FILED

Jun 05 2026, 9:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Anonymous Medical Provider A, Anonymous Medical Provider B, Anonymous Medical Provider C, Anonymous Doctor A, Anonymous Doctor B, Anonymous Doctor C, Anonymous Doctor D, Anonymous Executive A, and Anonymous Executive B,

*Appellees/Defendants*

and

Amy Beard, Commissioner of the Indiana Department of Insurance,

*Party of Interest*

---

June 5, 2026

Court of Appeals Case No.
25A-CT-945

Appeal from the Vigo Superior Court

The Honorable Daniel W. Kelly, Judge

Trial Court Cause No.
84D06-2109-CT-005179

---

**Opinion by Judge Felix**
Judges May and Mathias concur.

**Felix, Judge.**

## Statement of the Case

Patrick Hawkins was seriously injured in a vehicle accident involving a driver under the influence of prescribed methadone. Hawkins sued nine individuals and entities associated with the driver's opioid abuse treatment, and he sought a preliminary determination that his claims against five of the defendants were ordinary negligence claims, not medical malpractice claims. A cross-motion for preliminary determination was filed seeking a determination that the claims against all defendants were medical malpractice claims. The five defendants named in Hawkins's motion also filed a motion to strike certain evidence Hawkins had designated in support of his motion. The trial court granted the motion to strike, denied Hawkins's motion, and granted the cross-motion. Hawkins now appeals and presents two issues for our review:

1. Whether the trial court abused its discretion by striking certain designated evidence; and

2. Whether the trial court erred by denying Hawkins's motion for preliminary determination and granting the cross-motion for preliminary determination.

[2] We affirm.

## Facts and Procedural History

[3] On the morning of September 26, 2019, Ethan Luken was administered methadone as part of his ongoing opioid abuse treatment, which he had begun one week before. Later that day, at approximately 5:30 p.m., both Hawkins and Luken were driving in Terre Haute, Indiana; Hawkins was operating a motorcycle and Luken was operating a vehicle. While the two were traveling in opposite directions on Maple Avenue, Luken turned left, colliding with Hawkins. Luken was uninjured; Hawkins suffered a broken neck, concussion, and road rash. In connection with this wreck, Luken was charged with and convicted of operating a vehicle while intoxicated.

[4] Thereafter, Hawkins filed a proposed complaint for negligence with the Indiana Department of Insurance ("IDOI") and the trial court. Hawkins named nine defendants: Anonymous Medical Provider A, Anonymous Medical Provider B, Anonymous Medical Provider C, Anonymous Doctor A, Anonymous Doctor B, Anonymous Doctor C, Anonymous Doctor D, Anonymous Executive A, and Anonymous Executive B. Anonymous Medical Provider B (the "Treatment Program") is the opioid treatment program in which Luken was participating when the wreck occurred. As relevant here, two separate entities ran the Treatment Program: (1) Anonymous Medical Provider A (the

"Administrator"), which held the state-issued license for the Treatment Program, provided administrative services like security and billing, and provided counseling services to the Treatment Program's patients; and (2) Anonymous Medical Provider C (the "Operator"), which managed the Treatment Program's day-to-day operations and provided medical services to the Treatment Program's patients, including nurses and drug screen supplies. Anonymous Doctor A (the "Chief Medical Officer") was the Administrator's Chief Medical Officer. Anonymous Doctor B (the "Chief of Addictions Services") was the Administrator's Chief of Addictions Services. Anonymous Executive A (the "Sponsor-CEO") is the Treatment Program's sponsor and the Administrator's Chief Executive Officer and President. Anonymous Executive B (the "Director-CEO") was the Treatment Program's director and the Operator's Chief Executive Officer and President. Anonymous Doctor C is the medical director for the Treatment Program, and Anonymous Doctor D is the clinical physician at the Treatment Program.

In November 2024, Hawkins filed a motion for preliminary determination of law, asking the trial court to decide that the Indiana Medical Malpractice Act (the "MMA") does not apply to his claim against the Administrator, the Chief Medical Officer, the Chief of Addictions Services, the Sponsor-CEO, and the Director-CEO (collectively, the "Appellees"). In support, Hawkins designated the probable cause affidavit and plea agreement in Luken's criminal case; an excerpt from the Substance Abuse and Mental Health Services

Administration's[1] Treatment Improvement Protocol 63 ("the Protocol 63 Excerpt"); depositions of the Sponsor-CEO, the Director-CEO, the Chief Medical Officer, the Chief of Addictions Services, and Anonymous Doctors C and D; exhibits from those depositions; and various filings in this case.

[6] The Director-CEO filed a cross-motion for a preliminary determination of law and for summary judgment, asking the trial court to decide that the MMA applies to Hawkins's claims against him. In support, the Director-CEO designated his own affidavit, with attachments, regarding his professional liability insurance coverage as well as a letter from the IDOI to that effect. The other four Appellees filed a joint brief in opposition to Hawkins's motion and in support designated several of Hawkins's designated exhibits; affidavits from the Chief Medical Officer, the Chief of Addictions Services, and the Sponsor-CEO; and various filings in this case. The Appellees also filed a joint motion to strike the probable cause affidavit and the Protocol 63 Excerpt, "including all attachments in their entirety, as well as the facts designated within [Hawkins's] brief in support of the motion for preliminary determination of law that were pulled from those documents." Appellant's App. Vol. VI at 196.

[7] The trial court (1) denied Hawkins's motion for a preliminary determination, (2) granted the Director-CEO's cross-motion for a preliminary determination

---

[1] "The Substance Abuse and Mental Health Services Administration (SAMHSA) is the U.S. Department of Health and Human Services agency that leads public health efforts to reduce the impact of substance abuse and mental illness on America's communities." Appellant's App. Vol. II at 127.

and for summary judgment, and (3) granted the Appellees' motion to strike. Upon the parties' request, the trial court entered final judgment as to these rulings. This appeal ensued.[2]

## Discussion and Decision

[8] Hawkins's appeal stems from his and the Director-CEO's motions for preliminary determination. Pursuant to the MMA, a party to a malpractice action may request the appropriate trial court to "preliminarily determine an . . . issue of law or fact." Ind. Code § 34-18-11-1(a)(1). "A preliminary-determination proceeding is unique in nature but is inextricably linked to the larger medical malpractice case as a mechanism to decide threshold issues." *Anonymous Hosp. v. Spencer*, 158 N.E.3d 380, 384 (Ind. Ct. App. 2020) (citing *Ramsey v. Moore*, 959 N.E.2d 246, 253 (Ind. 2012)), *trans. denied*. And where, as here, "evidence accompanies a motion for preliminary determination, the motion is akin to a motion for summary judgment," *Lorenz v. Anonymous Physician #1*, 51 N.E.3d 391, 396 (Ind. Ct. App. 2016) (footnote omitted) (citing *Haggerty v. Anonymous Party 1*, 998 N.E.2d 286, 294 (Ind. Ct. App. 2013)), and is thus "subject to the same standard of appellate review as a summary-judgment motion," *Haggerty*, 998 N.E.2d at 294 (citing *Hodge v. Johnson*, 852 N.E.2d 650, 652 (Ind. Ct. App. 2006), *trans. denied*).

---

[2] The Treatment Program, the Operator, and Anonymous Doctors C and D do not participate in this appeal.

[9] We first address Hawkins's challenge to the trial court's grant of the motion to strike. We then address Hawkins's challenge to the trial court's denial of his motion for preliminary determination and grant of the Director-CEO's motion for preliminary determination.

## 1. Any Error Occasioned by the Trial Court Striking Certain Designated Evidence Was Harmless

[10] Hawkins contends the trial court abused its discretion by granting the motion to strike the probable cause affidavit and the Protocol 63 Excerpt. The probable cause affidavit includes details of the wreck and law enforcement's investigation. The Protocol 63 Excerpt contains guidance from the federal government on information and warnings that should generally be given to patients before starting methadone-based treatment. Although the trial court did not explain its decision to grant the motion to strike this evidence, it did note that "even if it were to deny the motion to strike, the court's ruling on the dispositive law would be the same: the court finds that the alleged acts fall within the purv[i]ew of the Indiana [Medical] Malpractice Act." Appellant's App. Vol. II at 21.

[11] "A trial court has broad discretion in ruling on a motion to strike, especially with regard to the admissibility of evidence." *Moryl v. Ransone*, 4 N.E.3d 1133, 1138 n.5 (Ind. 2014) (citing *Kroger Co. v. Plonski*, 930 N.E.2d 1, 5 (Ind. 2010), *abrogated in part on other grounds by Rogers v. Martin*, 63 N.E.3d 316 (Ind. 2016)). To the extent the trial court's ruling on the motion to strike depended on legal questions, we review the ruling de novo. *See Tunstall v. Manning*, 124 N.E.3d

1193, 1196 (Ind. 2019) (citing *Fairbanks v. State*, 119 N.E.3d 564, 567 (Ind. 2019)). To the extent the ruling did not raise a question of law, we review it for an abuse of discretion. *Id.* (citing *Fairbanks*, 119 N.E.3d at 567). A trial court abuses its discretion if its decision "is clearly against the logic and effect of the facts and circumstances." *Fairbanks*, 119 N.E.3d at 568 (citing *Shinnock v. State*, 76 N.E.3d 841, 842–43 (Ind. 2017)).

[12] Here, we need not determine if the trial court abused its discretion by granting the motion to strike. Even if we assume that the trial court erred in striking the probable cause affidavit and Protocol 63, any such error was harmless, *see* Ind. Appellate Rule 66(A), because neither the events underlying this case nor government-recommended protocols tell us whether and to what extent the Appellees' alleged negligence constitutes "health care."

## 2. The Trial Court Did Not Err by Denying Hawkins's Motion for Preliminary Determination and Granting the Director-CEO's Cross-Motion for the Same

[13] Hawkins argues the trial court erred by denying his motion for preliminary determination and granting the Director-CEO's cross-motion for preliminary determination. We review the trial court's rulings on these motions de novo, *Gierek v. Anonymous 1*, 250 N.E.3d 378, 384 (Ind. 2025) (citing *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014)), which means we apply the same standard as the trial court, *Wohlt v. Wohlt*, 245 N.E.3d 611, 615 (Ind. 2024) (citing *Red Lobster Rests. LLC v. Fricke*, 234 N.E.3d 159, 165 (Ind. 2024)). *See Haggerty*, 998 N.E.2d at 294 (citing *Hodge*, 852 N.E.2d at 652). To grant a motion for

preliminary determination, "the designated evidentiary matter [must] show[] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); *see Haggerty*, 998 N.E.2d at 294 (citing *Hodge*, 852 N.E.2d at 652). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Abbott v. State*, 183 N.E.3d 1074, 1079 (Ind. 2022) (quoting *Hughley*, 15 N.E.3d at 1003). Where, as here, the parties have filed cross-motions, our standard of review and analysis remain the same, and we consider each motion separately. *Erie Indem. Co. v. Est. of Harris*, 99 N.E.3d 625, 629 (Ind. 2018) (citing *SCI Propane, LLC v. Frederick*, 39 N.E.3d 675, 677 (Ind. 2015)).

[14] Both Hawkins and the Director-CEO sought a preliminary determination regarding whether the MMA applies to Hawkins's claims against the Appellees. That is, to the extent the Appellees may be liable to Hawkins, does their liability sound in medical malpractice or in ordinary negligence?

[15] "[T]he MMA covers **all** claims for 'malpractice' by a 'patient' against a 'health care provider' . . . ." *Gierek*, 250 N.E.3d at 385 (emphasis in original). "Malpractice" is "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." I.C. § 34-18-2-18. To determine whether a claim sounds in medical malpractice, we look to whether the claim "is based on

the provider's behavior or practices while acting in his or her professional capacity as a provider of medical services," *Ind. Dep't Ins. v. Doe*, 247 N.E.3d 1204, 1214 (Ind. 2024) (quoting *Doe v. Ind. Dep't Ins.*, 194 N.E.3d 1197, 1200 (Ind. Ct. App. 2022), *trans. denied*, 205 N.E.3d 194 (Ind. 2023)). If the complained-of conduct has a causal connection to the nature of the patient-health care provider relationship, the claim sounds in medical malpractice. *Id.* (quoting *Metz ex rel. Metz v. Saint Joseph Reg'l Med. Ctr.-Plymouth Campus, Inc.*, 115 N.E.3d 489, 495 (Ind. Ct. App. 2018)). If the complained-of conduct "is 'demonstrably unrelated to the promotion of the plaintiff's health or an exercise of the provider's professional expertise, skill, or judgment,'" *id.* at 1215 (quoting *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 186 (Ind. 2011))—that is, a factfinder can resolve the factual issues without applying the standard of care prevalent in the local medical community, *id.* at 1216 (quoting *Van Sice v. Sentany*, 595 N.E.2d 264, 267 (Ind. Ct. App. 1992))—the claim sounds in ordinary negligence.

[16]     Hawkins specifically argues that his claims against the Appellees do not sound in medical malpractice because their alleged negligent acts do not qualify as "health care."[3] If so, Hawkins's claims are claims of ordinary negligence and

---

[3] The parties do not dispute that Hawkins is a patient under the MMA. *See* Ind. Code § 34-18-2-22 (defining "patient" to include "a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider"); *Lake Imaging, LLC v. Franciscan Alliance, Inc.*, 182 N.E.3d 203, 208 (Ind. 2022) (quoting *Cutchin v. Beard*, 171 N.E.3d 991, 995 (Ind. 2021)) (explaining "patient" includes a third-party patient, who has "a claim against a provider for malpractice to a traditional patient"). The parties also do not dispute that the Appellees are qualified health care providers. *See* I.C. § 34-18-2-14 (defining "health care provider" to include individuals and entities—as well as their officers, employees, and agents—that are "licensed or legally authorized by this state to provide health care or professional services");

not subject to the MMA; if not, they are claims of medical malpractice and subject to the MMA.

[17]   "Health care" is "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement."  I.C. § 34-18-2-13.  This term "encompass[es] the 'curative or salutary conduct of a health care provider acting within his or her professional capacity'"; it does not encompass "conduct 'unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment.'"  *Doe*, 247 N.E.3d at 1213 (quoting *Gordon*, 952 N.E.2d at 185).  Thus, the fact that the alleged misconduct occurred in a health care facility or that the injured party was a patient at the facility is not dispositive of whether the claim sounds in medical malpractice.  *Plummer v. Beard*, 209 N.E.3d 1184, 1189 (Ind. Ct. App.) (quoting *Doe*, 194 N.E.3d at 1200), *trans. denied*, 221 N.E.3d 1212 (Ind. 2023).  Likewise, the statutory definition of "health care" "focus[es] on timing [by] requiring that the alleged tortious conduct (whether by omission or commission) occur 'during' a patient's care, treatment, or confinement"; the definition thus "imposes a temporal requirement that tethers the misconduct to patient care."  *Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368, 376 (Ind. 2022) (citing I.C. § 34-18-2-13).

*id.* § 34-18-2-24.5 (defining "qualified provider" as a health care provider that complies with the procedures set forth in I.C. §§ 34-18-3-1 to -7).

[18]     In his complaint, Hawkins alleged the Appellees "were negligent and breached the standard of care in prescribing methadone to Luken in various ways," including by not (1) "instruct[ing] Luken that he should not drive after receiving methadone doses," (2) "warn[ing] Luken of the dangers associated with operating a motor vehicle while under the influence of methadone," (3) "screen[ing] Luken for cognitive impairment caused by methadone," (4) "properly adjusting Luken's methadone dosage so that it did not impair him," and (5) "request[ing] that the Indiana Bureau of Motor Vehicle's [sic] assess Luken's ability to operate a vehicle after receiving methadone." Appellant's App. Vol. II at 32.

[19]     In his brief in support of his motion for preliminary determination, Hawkins argued the MMA does not apply to his negligence claim against the Appellees because none of them had a doctor-patient relationship with Luken. Based on this lack of a patient-physician relationship, Hawkins contends on appeal that there is no causal connection between the Appellees' exercise of professional judgment and the treatment of Luken. In particular, Hawkins asserts that the Appellees' failure "to instruct Luken that he should not drive after receiving methadone doses" and failure "to warn Luken of the dangers associated with operating a motor vehicle while under the influence of methadone", Appellant's App. Vol. II at 31–32, were not decisions actually directed at Luken or any particular patient but were instead program-wide decisions to not warn and instruct any patient regarding methadone and driving.

[20]     This court has previously rejected similar arguments. In *Robertson v. Anonymous Clinic*, several health care providers had chosen to source a preservative-free steroid from a specific compounding pharmacy. 63 N.E.3d 349, 352–56 (Ind. Ct. App. 2016), *trans. denied*. That decision proved injurious to numerous patients who contracted meningitis from contaminated batches of the pharmacy's steroid. *Id.* The injured patients sued, and a dispute arose regarding whether the patients' claims against the health care providers who selected the pharmacy sounded in medical malpractice. *Id.* at 356. The Indiana Patient's Compensation Fund argued in relevant part that the claims sounded in ordinary negligence because the providers' decisions to obtain the steroid from the pharmacy occurred years before the providers treated any of the injured patients. *Id.* at 362. Thus, according to the Fund, there was no causal connection between the providers' exercise of medical judgment and the treatment of any individual patient. *Id.* This court disagreed, reasoning in part that the MMA is not restricted to "only decisions made by providers with specific patients in mind." *Id.* Instead, "general decisions that later affect particular patients are not exempt from the provisions of the MMA for an alleged lack of causal connection." *Id.* at 363.

[21]     In *Preferred Professional Insurance Co. v. West*, the plaintiffs alleged in relevant part that a certified athletic trainer acting as a nurse failed to provide proper

warnings and instructions to a traditional patient[4] about his narcotic prescription and that her failure to warn and instruct resulted in the traditional patient injuring the plaintiffs while operating heavy machinery. 23 N.E.3d 716, 728–29 (Ind. Ct. App. 2014), *disapproved of on other grounds by Cutchin v. Beard*, 171 N.E.3d 991, 997–98 (Ind. 2021). On appeal, the plaintiffs argued in part that the MMA did not apply to the certified athletic trainer's alleged negligence because she was a "non-medical employee" and "not a licensed nurse." *Id.* at 729. This court disagreed, stating that the "athletic trainer versus licensed nurse distinction" was not "legally dispositive." *Id.*; *see also id.* at 733 (Robb, J., concurring in result). In particular, the *West* majority observed that the certified athletic trainer was the doctor's assistant, the medical provider's employee, "considered the acting nurse," and "responsible for communicating with patients and physicians." *Id.* at 729 (majority). The *West* majority also determined that the plaintiffs' allegations "present[ed] a set of facts that allege negligence 'at the periphery of medical malpractice.'" *Id.* at 728 (quoting *Eads v. Cmty. Hosp.*, 932 N.E.2d 1239, 1244 (Ind. 2010)).[5]

---

[4] A "traditional patient" is a person who has "a direct relationship with a healthcare provider." *Lake Imaging*, 182 N.E.3d at 208 (quoting *Cutchin*, 171 N.E.3d at 995); *see also* I.C. § 34-18-2-22.

[5] The *West* court nevertheless held that the plaintiffs' failure to warn and instruct claim sounded in ordinary negligence because the plaintiffs were not "patients" within the meaning of the MMA. *Preferred Prof'l Ins. Co. v. West*, 23 N.E.3d 716, 729–33 (Ind. Ct. App. 2014), *disapproved of by Cutchin*, 171 N.E.3d at 997 (disapproving *West*'s analysis of "patient" because it "is at odds with the [MMA]'s plain meaning, as well as [the Indiana Supreme Court's] own precedent and interpretive canon").

[22] To the extent the Appellees may be liable for failing to instruct and warn Luken as Hawkins alleges, their lack of a doctor-patient relationship with Luken is not dispositive of whether their potential liability sounds in ordinary negligence or medical malpractice. *See Robertson*, 63 N.E.3d at 362–63; *West*, 23 N.E.3d at 729. And any decisions the Appellees made regarding instructions and warnings that Hawkins alleges should have been given are not exempt from the MMA's provisions for an alleged lack of causal connection. *See Robertson*, 63 N.E.3d at 362–63.

[23] Hawkins compares his claims against the Appellees to the claims in *Community Health Network, Inc. v. McKenzie*, 185 N.E.3d 368 (Ind. 2022), and *Plummer v. Beard*, 209 N.E.3d 1184 (Ind. Ct. App. 2023). In *McKenzie*, one of Community Health Network's medical-records coordinators "improperly accessed and disclosed information from the confidential medical records of several individuals." 185 N.E.3d at 373. This court faced a similar scenario in *Plummer*, wherein a registered nurse accessed confidential medical records of people who were not her patients. 209 N.E.3d at 1187. The *McKenzie* and *Plummer* courts determined the development and implementation of policies safeguarding confidential patient information were all "directed inward," did not relate "to the promotion of a patient's health," and did not "require 'the provider's exercise of professional expertise, skill, or judgment.'" *McKenzie*, 185 N.E.3d at 376; *see also Plummer*, 209 N.E.3d at 1191–93. Consequently, the plaintiffs' claims sounded in ordinary negligence because the policies and procedures regarding access of their medical records did not qualify as a

"professional service" that was "provided to a patient" under the MMA. *McKenzie*, 185 N.E.3d at 376–77; *Plummer*, 209 N.E.3d at 1191–93.

[24] The facts of this case are distinguishable from those in *McKenzie* and *Plummer*. Here, the Appellees' alleged decision to not warn and instruct Luken about the alleged dangers of driving while taking methadone was directed both inward— toward employees regarding the warnings and instructions to give patients— and outward—toward patients regarding the warnings and instructions they received. While there is an internal component to the alleged decision to not warn and instruct, which is similar to the purely internal decisions at issue in *McKenzie* and *Plummer*, the alleged decision also had an external component tied directly to patients and the care they received through the Treatment Program. That is, the Appellees' alleged decision to not warn and instruct is related to the promotion of a patient's health. This alleged decision also required the Appellees' exercise of professional expertise, skill, or judgment.

[25] Hawkins further argues that the MMA does not apply to his negligence claim against the Appellees because their alleged failure to warn and instruct did not "involve providing any type of medical services or care." Appellant's Br. at 50. This court has previously held that allegedly negligent conduct did not qualify as "health care" when a health care professional was not required to participate therein. *B.R. ex rel. Todd v. State*, 1 N.E.3d 708, 715–16 (Ind. Ct. App. 2013), *trans. denied*; *OB-GYN Assocs. of N. Ind., P.C. v. Ransbottom*, 885 N.E.2d 734, 739 (Ind. Ct. App. 2008), *trans. denied*. For example, in *OB-GYN Associates of Northern Indiana, P.C. v. Ransbottom*, the laser hair removal at issue was not

"health care" because "physicians were not involved in [plaintiff]'s treatment, and the operator of the laser machine was not required to be a healthcare worker or possess healthcare credentials such as medical degrees, medical licensure, or medical certification in order to operate the machine." 885 N.E.2d at 739. And in *B.R. ex rel. Todd v. State*, the foster care placement at issue was not "health care" because "a health care professional was not required to, and a health care professional did not, participate in [plaintiff]'s case manager's decision to place him in the [particular] home for respite therapeutic foster care." 1 N.E.3d at 715–16. Although both *Ransbottom* and *B.R.* involved a health care setting—a physician's office and a health center, respectively—that fact was not determinative. Instead, in both cases, a "medical professional [was] no better equipped than the average juror to consider whether the [alleged tortfeasor] complied with the appropriate standard of care." *B.R.*, 1 N.E.3d at 716 (citing *H.D. v. BHC Meadows Hospital, Inc.*, 884 N.E.2d 849, 855 (Ind. Ct. App. 2008), *trans. denied*); *see Ransbottom*, 885 N.E.2d at 739. The MMA therefore did not apply to the claims in either case. *B.R.*, 1 N.E.3d at 717; *Ransbottom*, 885 N.E.2d at 740.

[26] Here, by contrast, the Appellees' alleged decision to not warn and instruct Luken required a health care professional's participation. Determining whether to warn or instruct a patient about alleged side effects and risks of taking prescribed methadone necessarily requires involvement from individuals with health care training. The issues presented in this case surrounding the Appellees' alleged failure to warn and instruct are not "unquestionably within

the understanding of the average lay juror," *B.R.*, 1 N.E.3d at 716, as was the alleged negligence in *B.R.* A medical professional is better equipped than the average juror to consider whether the Appellees complied with the appropriate standard of care.

[27] Hawkins's claims against the Appellees are based on their behavior or practices while acting in their professional capacities as providers of medical services. That is, the Appellees' alleged negligence qualifies as curative or salutary conduct that is tethered to patient care. Additionally, a factfinder cannot resolve the factual issues in Hawkins's claims against the Appellees without applying the standard of care prevalent in the local medical community. The Appellees' alleged failure to warn and instruct Luken is "health care" within the meaning of the MMA, and the MMA applies to Hawkins's claims against the Appellees. The trial court thus did not err by denying Hawkins's and granting the Director-CEO's motions for preliminary determination on that issue.

## Conclusion

[28] In sum, the trial court did not err by granting the motion to strike, denying Hawkins's motion for preliminary determination, and granting the Director-CEO's cross-motion for preliminary determination and summary judgment. We therefore affirm the trial court on all issues raised.

[29] Affirmed.

May, J., and Mathias, J., concur.

ATTORNEYS FOR APPELLANT

Jeffrey J. Mortier
Blake N. Shelby
Robert B. Thornburg
Maggie L. Smith
Frost Brown Todd LLP
Indianapolis, Indiana


ATTORNEYS FOR APPELLEES – ANONYMOUS EXECUTIVE B, ANONYMOUS MEDICAL PROVIDER C, ANONYMOUS DOCTOR C, AND ANONYMOUS DOCTOR D

Sean T. Devenney
Melanie A. Kalmbach
Drewry Simmons Vornehm, LLP
Carmel, Indiana


ATTORNEYS FOR APPELLEES – ANONYMOUS MEDICAL PROVIDER A, ANONYMOUS DOCTOR A, ANONYMOUS DOCTOR B, ANONYMOUS EXECUTIVE A, AND ANONYMOUS MEDICAL PROVIDER B

Jeffrey D. Roberts
Ashley R. Roncevic
Roberts Means Roncevic Kapela LLC
Carmel, Indiana

Suzannah Wilson Overholt
Stoll Keenon Ogden PLLC
Indianapolis, Indiana