INDIANA PATIENT'S COMPENSATION FUND, Appellant–Defendant,

v.

Christine WOLFE, William Wolfe IV, and Thomas Wolfe, Appellees–Plaintiffs.

No. 49A02–9912–CV–859.

Court of Appeals of Indiana.

Sept. 26, 2000.

Robert G. Weddle, Matthew W. Conner, Tabbert Hahn Earnest & Weddle, Indianapolis, Indiana, Attorneys for Appellant.

Timothy J. Kennedy, Katherine A. Kling, Miller Muller Mendelson & Kennedy, Indianapolis, Indiana, Attorneys for Amicus Curiae The Indiana Trial Lawyers Association.

Jerry Garau, Barbara J. Germano, Findling Garau Germano & Pennington, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

BAILEY, Judge

### Case Summary

Indiana Patient's Compensation Fund ("Fund") appeals from the trial court's entry of summary judgment in favor of Thomas Wolfe ("Thomas"), Christine Wolfe ("Christine") and William Wolfe IV ("William") (collectively, "the Wolfes"). The trial court granted summary judgment in favor of the Wolfes, ruling that each Wolfe is a patient who is entitled to a separate statutory damages cap under the Indiana Medical Malpractice Act ("the Act"), and that a single $100,000.00 payment by the health care provider entitles each Wolfe to access the fund. We reverse and remand with instructions.

### Issue

The Fund raises two issues for our review, one of which is dispositive. We restate that issue as follows: whether a parent who has a derivative claim, based on loss of services, constitutes a "patient" under Indiana Code section 34–18–2–22 and is therefore entitled to a separate statutory damages cap under the Act.[1]

---

1. The other issue raised by the Fund is: whether one payment of the maximum statutory liability by a health care provider entitles more than one person to access the Fund for

## Facts and Procedural History

William and Christine are the parents of Thomas. On January 6, 1995, Christine entered Dukes Memorial Hospital ("Dukes") for trial induction of labor. When Thomas was delivered on January 7, 1995, by Christi Redmon, M.D. ("Dr.Redmon"), his umbilical cord was wrapped around his neck six times. Thomas was resuscitated immediately upon delivery, but he suffered brain damage as a result of the complications during delivery. On September 13, 1995, the Wolfes filed a proposed complaint for medical malpractice against Dr. Redmon and Dukes. Although a medical review panel determined that neither Dr. Redmon nor Dukes rendered substandard care, the Wolfes filed a complaint against Dr. Redmon and Dukes in the trial court. That complaint alleged that Thomas suffered brain damage, Christine suffered emotional distress, and William and Christine suffered the loss of Thomas's services, love and affection as the result of Dr. Redmon's and Duke's actions or omissions.

On December 23, 1998, Dr. Redmon and Dukes agreed to settle the Wolfes' claim by paying $100,000.00 pursuant to Indiana Code section 34–18–14–4. The Wolfes subsequently filed a claim to recover excess damages from the Fund, pursuant to Indiana Code section 34–18–15–3. The Wolfes filed a motion for partial summary judgment, asking the trial court to determine as a matter of law that William and Christine, as parents with derivative claims for loss of services, have a separate right of recovery under a separate statutory damages cap. The Wolfes also asked for summary judgment on the issue of whether a health care provider's single payment of $100,000.00 entitles all patients injured by the same act of malpractice the right to access the Fund. The Fund filed its own motion for partial summary judg-

ment, seeking to have the court determine that all three Wolfes constitute one patient for purposes of the Act, or in the alternative, that each Wolfe was required to receive a $100,000.00 payment from the health care provider before accessing the Fund. The trial court granted summary judgment in favor of the Wolfes on both issues. This appeal ensued.

## Discussion and Decision

### I. Summary Judgment Standard of Review

When reviewing the grant or denial of a motion for summary judgment, this Court applies the same standard of review as the trial court. We must determine whether the designated evidentiary matter shows that there is no genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Rose & Walker, Inc. v. Swaffar*, 721 N.E.2d 899, 901 (Ind.Ct.App. 2000), *trans. denied.* Our standard of review is not altered by cross-motions for summary judgment. *Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933, 936 (Ind.Ct.App.1996). We do not weigh evidence, but construe the designated evidentiary materials in a light most favorable to the losing party, giving careful scrutiny to ensure that that party is not improperly denied his day in court. *Becker v. Four Points Inv. Corp.*, 708 N.E.2d 29, 30 (Ind.Ct.App.1999), *trans. denied.* The party appealing the trial court's grant or denial of summary judgment bears the burden of persuading us that the trial court erred. *Rose & Walker*, 721 N.E.2d at 901. A trial court's grant of summary judgment is clothed with a presumption of validity on appeal, and we will affirm if it is sustainable on any theory supported by the designated evidence in the record. *Bamberger*, 665 N.E.2d at

additional recovery based on one occurrence of malpractice. However, because we hold that, under the facts of this case, there is only one "patient" as defined by the Act, we need not address whether more than one person

can access the Fund when a health care provider makes a single payment of his maximum statutory liability based on a single occurrence of malpractice.

936. In the instant case, the meaning of a statute is at issue, and because the parties agree that the relevant facts are not in dispute, the construction of the statute is a pure question of law for which disposition by summary judgment is appropriate. *Blackmon v. Duckworth,* 675 N.E.2d 349, 351 (Ind.Ct.App.1996).

## II. The Medical Malpractice Act

Indiana Code section 34–18–14–3[2] provides, in pertinent part:

> (a) The total amount recoverable for an injury or death of a patient may not exceed five hundred thousand dollars ($500,000) except that, as to an act of malpractice that occurs on or after January 1, 1990, the total amount recovered for an injury or death may not exceed seven hundred fifty thousand dollars ($750,000).
>
> (b) A health care provider qualified under this article . . . is not liable for an amount in excess of one hundred thousand dollars ($100,000) for an occurrence of malpractice.
>
> (c) Any amount due from a judgment or settlement that is in excess of the total liability of all liable health care providers, subject to subsections (a), (b), and (d), shall be paid from the patient's compensation fund under IC 34–18–15.
>
> . . .

The Act defines "patient" as follows:

> "Patient" means an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider. Derivative claims include the claim of a parent or parents, guardian, trustee, child, relative, attorney, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, and other similar claims.

IND.CODE § 34–18–2–22.

 In construing a statute, our primary task is to determine and give effect to the intent of the legislature. *Hendricks Co. Bank & Trust Co. v. Guthrie Bldg. Materials,* Inc., 663 N.E.2d 1180, 1183 (Ind.Ct.App.1996). When a statute is clear and unambiguous on its face, this court may not interpret the statute. *Id.* When construing a statute, the legislature's definition of individual words is binding upon us. *Rose & Walker,* 721 N.E.2d at 901. Further, we presume the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Hendricks Co.,* 663 N.E.2d at 1184.

## III. Whether a Parent with a Derivative Claim is a Patient Who is Entitled to a Separate Statutory Cap under the Act

 Christine and William contend that, as parents with derivative claims, they are each considered a "patient" under the Act, and as such, they are each entitled to access the fund under a separate statutory cap. The Fund, on the other hand, argues that Christine's and William's derivative claims do not make them patients with their own right to access the fund, but that Christine's and William's derivative claims are included within Thomas's action. Thus, according to the Fund, the three Wolfes constitute one patient, and are entitled to only one statutory cap.

### Analysis

 The legislature limited recovery for "an injury to or death of *a patient*" to $750,000.00. IND.CODE § 34–18–14–3(a) (emphasis added). This unambiguously provides that each patient may recover up to $750,000.00 for an injury or death caused by an act of malpractice. Howev-

**2.** Indiana Code section 34–18–14–3 was amended, effective July 1, 1999, and now allows recovery of up to $1,250,000.00 for acts of malpractice occurring after June 30, 1999. However, our references are to the statutes in effect in 1995.

er, because the present issue turns on who is entitled to recover up to $750,000.00, we must determine who falls under the legislature's definition of "patient." The legislature provided that the term "patient" "means an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider." IND.CODE § 34–18–2–22. Both parties agree that this definition is unambiguous; however, the parties do not agree on who is a patient under the definition. The Wolfes argue that a "patient" is (1) an individual who receives or should have received health care from a health care provider, and (2) a person who has any claim, whether derivative or otherwise, as a result of alleged malpractice by a health care provider. The Fund argues that a "patient" is only a person who receives or should have received health care, and that any derivative claim that might arise from the malpractice committed on the patient is included within that patient's claim. We agree with the Fund's interpretation of "patient."

The term "means" is defined as "2. To intend to convey or indicate." AMERICAN HERITAGE DICTIONARY (3d ed.1996). Thus, the legislature's use of "means" in the first portion of the definition indicates that "an individual who receives or should have received health care" is the definition of the term "patient." The legislature goes on to state that the definition of "patient" "includes" those with derivative claims. "Includes" is defined as "1. To take in as a part, an element or a member. 2. To contain as a secondary or subordinate element." AMERICAN HERITAGE DICTIONARY (3d ed.1996). Thus, the legislature's use of the word "includes" expresses its intent that

those with derivative claims are a part of the whole patient, and not patients in and of themselves. In other words, a "patient" is a person who receives or should have received health care; a subset of that definition is composed of those with derivative or any other claims. Further support for our interpretation of the statute is found in the second sentence of the legislature's definition of patient. In that sentence, the legislature defined a derivative claim as "the claim of a parent or parents ... or any other representative *of the patient* including claims for loss of services, loss of consortium, expenses, and other similar claims." IND.CODE § 34–18–2–22 (emphasis added). Because the legislature described a derivative claim as the claim of a parent or any other representative of the patient, the legislature could not have intended the parent to also fall under the definition of "patient." Thus, our reading of the plain language of Indiana Code section 34–18–2–22 leads us to the conclusion that a derivative claimant is a subset of the patient and not a patient unto himself.

■ When we apply the definition of "patient" to the factual scenario of the present case, we determine that Thomas is a patient because he received or should have received health care from a health care provider. To analyze Christine's contention, that as a patient she is entitled to claim against a separate fund for the loss of Thomas's services, we look to Indiana Code section 34–18–14–3(a) to determine which patients may recover. Under this section, recovery is limited to patients who are injured or die from an act of malpractice. Therefore, to the extent Christine seeks damages for the loss of Thomas's services, her claim is derivative of and not separate from Thomas's claim. Therefore, neither William nor Christine are patients for purposes of their derivative claims seeking loss of services.[3] Instead, their

---

**3.** Because the Wolfes only sought summary judgment on the issue of whether, as parents with derivative claims for loss of services, they were patients who were entitled to a separate statutory damages cap, we need not address whether a patient, such as Christine, is entitled to claim against a separate statutory damages cap for injuries she may have

derivative claims are subsumed within Thomas's action. Applying this analysis to Indiana Code section 34–18–14–3(a), we hold that Thomas, as a patient, is entitled to recover up to $750,000.00 for any injury sustained by him as a result of malpractice. Further, the derivative claims of William and Christine, for loss of services, are included within Thomas's claim, and therefore limited to this same $750,000.00 cap.

 Contrary to the argument of *Amicus Curiae* for the Wolfes, our conclusion does not violate the Indiana Constitution. *Amicus* first argues that our interpretation violates Article I, Section 12 of the Indiana Constitution,[4] in that it does not provide a complete remedy to victims of malpractice. However, our supreme court has held that the limitation on recovery under the Act does not violate Article I, Section 12 of the Indiana Constitution. *Johnson v. St. Vincent Hospital, Inc.*, 273 Ind. 374, 404 N.E.2d 585, 599 (1980). In *Johnson*, our supreme court held that the Act's limitation of liability was necessary to provide a factor for calculating premiums and charges for the state-sponsored insurance fund. As such, the court held that the limited recovery was a rational means to achieve the legislature's goal of protecting the health care industry and the availability of services of health care providers. *Id.* That holding governs the present case, and accordingly, we hold that our interpretation of the definition of "patient" does not violation Article I, Section 12 of the Indiana Constitution.

 *Amicus* also argues that our interpretation violates Article I, Section 23 of the Indiana Constitution.[5] A constitutional analysis under Article I, Section 23 is conducted under the framework set forth in *Collins v. Day*, 644 N.E.2d 72 (Ind.1994). In *Collins*, our supreme court held that:

> Article I, Section 23 of the Indiana Constitution imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

*Id.* at 80. *Amicus* acknowledges that our supreme court has upheld the Act's differing treatment of medical malpractice victims from other tort victims, based on the legislature's goals of maintaining sufficient medical treatment and controlling malpractice insurance costs in Indiana. *Martin v. Richey*, 711 N.E.2d 1273, 1281 (Ind. 1999). However, *Amicus* argues that our interpretation of the definition of patient creates two subclasses of medical malpractice victims – those who have derivative claimants within their causes of action and those who do not—and therefore, the treatment accorded to malpractice victims is not equally available to all persons similarly situated. We disagree.

Each patient under the Act is entitled to seek damages up to the statutory cap imposed under Indiana Code section 34–18–4–3(a), and even though some patients may have derivative claims within their causes of action, the patient will be awarded the

---

sustained due to the negligent infliction of emotional distress.

4. Article I, Section 12 provides: "All courts shall be open; and every person for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and

without purchase; completely and without denial; speedily, and without delay."

5. Article I, Section 23 provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

damages to which he is entitled before any derivative damages are applied against the statutory maximum. Thus, all patients as defined by the Act are treated equally. Further, any subclassification that is created by our definition of patient furthers the legislature's goals of maintaining medical treatment and lowering medical costs in Indiana by limiting the maximum amount recoverable by a patient. Therefore, our construction of the definition of patient does not violate Article I, Section 23 of the Indiana Constitution.

Accordingly, we hold that the trial court erred by granting summary judgment in favor of the Wolfes on the issue of whether William and Christine, as Thomas's parents, are patients pursuant to Indiana Code section 34–18–2–22, and therefore, entitled to a separate statutory damages cap. Further, we hold that summary judgment in favor of the Fund on this issue is appropriate. Therefore, we reverse the decision of the trial court and remand with instructions to enter summary judgment in favor of the Fund on the issue of whether William and Christine, as parents with derivative claims for loss of services, are "patients" under the Act.

· Reversed and remanded with instructions.

SULLIVAN, J., and VAIDIK, J., concur.