The KROGER CO., d/b/a Kroger Rx, and Yolanta Simacek, Appellants–Defendants,

v.

The ESTATE OF John C. HINDERS, Appellee–Plaintiff.

No. 34A02–0112–CV–893.

Court of Appeals of Indiana.

Aug. 13, 2002.

Peter H. Pogue, Donald B. Kite, Sr., Schultz & Pogue, LLP, Carmel, IN, Attorneys for Appellants.

Kenneth L. Andrews, Kokomo, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Kroger Co. d/b/a Kroger Rx ("Kroger") and Yolanda Simacek ("Simacek") appeal the Howard Circuit Court's order denying its Motion for Summary Judgment in favor of The Estate of John C. Hinders ("Hinders' Estate"). The two restated issues on appeal are:

I. Whether the trial court erred when it determined that the occurrence-based statute of limitations contained in Indiana Code section 34–11–2–3 did not apply to bar Hinders' Estate's complaint against Kroger and Simacek; and,

II. Whether the trial court erred in determining that regardless of the applicable statute of limitations, Hinders' Estate's claim is not barred based upon application of the discovery rule.

We affirm.[1]

### Facts and Procedural History

In November of 1998, John C. Hinders ("Hinders") treated with his physician for hypertension. Hinders was prescribed Cardura for his hypertension. On November 19, 1998, Hinders presented the prescription to Simacek, a pharmacist employed by Kroger, who filled it that same day. Again on December 9, 1998, Hinders presented the prescription to Simacek for a refill, which she completed that same day.

One month later, on January 8, 1999, Hinders went to St. Joseph Hospital in Kokomo, Indiana, complaining of intestinal distress. Hinders was experiencing gastrointestinal bleeding. Hinders remained at the hospital until January 16, 1999, and then convalesced at Sycamore Village until February 1, 1999. On February 15, 1999, Hinders' niece, Peggy King, discovered that Hinders' Cardura prescription bottle contained Coumadin, a blood thinning medication, instead of Cardura. King contacted Hinders' physician and presented the Cardura prescription bottle filled with Coumadin to Kroger.[2]

On December 21, 2000, one year and nine months after discovering the Coumadin in the Cardura bottle, but two years and twelve days after Kroger and Simacek last filled the prescription, Hinders' Estate filed a complaint in the Howard Circuit Court requesting damages for medical expenses and emotional suffering based upon its allegation that Simacek negligently filled Hinders' Cardura prescription with Coumadin. Kroger and Simacek filed their Answer, which included their assertion that the claim was time-barred by the statute of limitations. Then on May 15, 2001, Kroger and Simacek filed a Motion for Summary Judgment and designated supporting evidence. On June 22, 2001, Hinders' Estate filed a Motion for Partial Summary Judgment and a response to Kroger and Simacek's motion. Hinders' Estate did not file any designated evidence in support of its motion. On July 11, 2001, Kroger and Simacek filed a Motion to Strike Hinders' Estate's response to Kroger and Simacek's motion, and a response to Hinders' Estate's Motion for Partial Summary Judgment. After hearing argument on all of these motions, on November 13, 2001, the trial court issued an order denying Kroger and Simacek's Motion for

---

1. Kroger and Simacek's Motion for Oral Argument is hereby denied.

2. Hinders subsequently died, but Hinders' Estate did not present a claim for wrongful death in this suit.

Summary Judgment, denying Hinders' Estate's Motion for Partial Summary Judgment, and granting Kroger and Simacek's Motion to Strike. It is from the denial of its Motion for Summary Judgment that Kroger and Simacek appeal. Additional facts will be provided as necessary.

## I. Standard of Review

Our standard of review of a summary judgment motion is the same standard used in the trial court:

Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. The review of a summary judgment motion is limited to those materials designated to the trial court. We must carefully review decisions on summary judgment motions to ensure that the parties were not improperly denied their day in court.

*Tom–Wat, Inc. v. Fink,* 741 N.E.2d 343, 346 (Ind.2001) (internal citations omitted). "When there are no disputed facts with regard to a motion for summary judgment and the question presented is a pure question of law, we review the matter *de novo.*" *Aide v. Chrysler Fin. Corp.,* 699 N.E.2d 1177, 1180 (Ind.Ct.App.1998), *trans. denied.* Additionally, "the standard of review is not altered by cross-motions for summary judgment." *Ind. Patient's Comp. Fund v. Wolfe,* 735 N.E.2d 1187, 1190 (Ind.Ct.App.2000), *trans. denied.*

## II. Applicability of Indiana Code section 34–11–2–3

Kroger and Simacek first argue that the trial court erred when it determined that the occurrence-based statute of limitations contained in Indiana Code section 34–11–2–3 was not applicable to Hinders' Estate's claim. Indiana Code section 34–11–2–3 reads:

An action of any kind for damages, whether brought in contract or tort, based upon professional services rendered or which should have been rendered, may not be brought, commenced, or maintained, in any of the courts of Indiana against physicians, dentists, surgeons, hospitals, sanitariums, or others, unless the action is filed within two (2) years from the date of the act, omission, or neglect complained of.

Ind.Code § 34–11–2–3 (1998). Kroger and Simacek argue that the "or others" part of this statute includes pharmacists and pharmacies. Nevertheless, Kroger and Simacek do not direct us to any Indiana cases against pharmacists and/or pharmacies brought under this statute of limitations, and we find none. Additionally, the trial court failed to directly address Kroger and Simacek's contention that Indiana Code section 34–11–2–3 applies rather than section 34–11–2–4. Rather, the trial court determined that regardless of which statute of limitations applies, Hinders' Estate timely filed their complaint based upon the discovery rule. Because of its importance, we address the statute of limitations issue directly.

In *Shideler v. Dwyer,* 275 Ind. 270, 417 N.E.2d 281 (1981), our supreme court held "that the doctrine of *ejusdem generis* limits the application to the term 'or others,' as used in [Indiana Code section 34–11–2–3], to others of the medical care community." *Id.* at 283 (discussing the statute when it was previously codified at Indiana Code section 34–4–19–1 in the context of a malpractice action against an attorney). Nevertheless, our supreme court did not elaborate on what groups and/or persons are "others of the medical care community." We therefore look to the historical application and evolution of this statute, in

addition to definitions in the medical malpractice statutes, for guidance.

Indiana Code section 34–11–2–3 began its existence in 1941 with the passage of an act concerning civil malpractice proceedings. Ind.Code § 2–627 (1946). Although this provision of the Indiana Code has been recodified several times since its inception, the language of the statute remains intact. Until the passage of the Medical Malpractice Act in 1975, this statute was used to determine the limitation period for all medical malpractice suits. Nevertheless, when the Medical Malpractice Act was codified, the new statutes included an exclusive list of "health care providers" that were afforded protection under the Act. Ind.Code § 34–18–2–14 (1998). The current statute reads:

> "Health care provider" means any of the following: (1) An individual, a partnership, a limited liability company, a corporation, a professional corporation, a facility, or an institution licensed or legally authorized by this state to provide health care or professional services as a physician, psychiatric hospital, hospital, health facility, emergency ambulance service (IC 16–18–2–107), dentist, registered or licensed practical nurse, physician assistant, midwife, optometrist, podiatrist, chiropractor, physical therapist, respiratory care practitioner, occupational therapist, psychologist, paramedic, emergency medical technician, or advanced emergency medical technician, or a person who is an officer, employee, or agent of the individual, partnership, corporation, professional corporation, facility, or institution acting in the course and scope of the person's employment.

*Id.*

Unlike the original medical malpractice statute, now found at Indiana Code section 34–11–2–3, the language of Indiana Code section 34–18–2–14 within the Medical Malpractice Act has been revised several times since its enactment in 1975. The following ten health care providers have been added to the definition since 1975: psychiatric hospital, health facility, emergency ambulance service, physician assistant, midwife, respiratory care practitioner, occupational therapist, paramedic, emergency medical technician, and advanced emergency medical technician. At no point have pharmacists and pharmacies been added to this carefully considered and exclusive list of health care providers afforded the protections of the Medical Malpractice Act by the General Assembly.

■ We acknowledge that Indiana law recognizes a relationship between a pharmacist and her customer that gives rise to a duty on the pharmacist's part. *Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514, 517 (Ind.1994). In *Hooks SuperX,* our supreme court found that, "pharmacists possess expertise regarding the dispensing of prescription drugs" and "that customers rely on pharmacists for that expertise." *Id.* In *Hooks SuperX,* the controversy before our supreme court was the rate at which a pharmacist was dispensing a dangerous drug prescription and the pharmacist's duty to cease refilling the prescription. *Id.* at 515. No statute of limitations issue was raised in *Hooks SuperX.* In the end, the court held that traditional negligence standards applied to the case. *Id.* at 519. Nevertheless, we do not accept Kroger and Simacek's proposition that such a relationship is equivalent to a doctor-patient relationship such that pharmacists and pharmacies should be protected by the occurrence-based statute of limitations found at Indiana Code section 34–11–2–3.

In every relationship between a patient and one of the listed health care providers under Indiana Code section 34–18–2–14, independent medical treatment is an im-

portant component of the health care provided. This characteristic is lacking in the relationship between a pharmacist and a customer simply requesting that a prescription be dispensed. Additionally, the purposes of affording the medical care community the protections of an occurrence-based statute of limitations, such as that contained in Indiana Code section 34–11–2–3 and section 34–18–2–14, is to alleviate the medical care community's fear of exposure to malpractice claims and lessen the alleged difficulty of obtaining malpractice insurance. Whether rightly or wrongly in the final analysis, in the mid–1970's the General Assembly accepted these fears and allegations as true and enacted the Medical Malpractice Act. It did so in order to prevent what it believed to be an imminent and stark increase in health care costs and a similar decrease in the availability of qualified health care providers and services to Indiana communities. *See generally Winona Mem. Found. v. Lomax,* 465 N.E.2d 731 (Ind.Ct.App.1984); *Warrick Hosp. v. Wallace,* 435 N.E.2d 263 (Ind.Ct.App.1982), *overruled on other grounds by Comm. Hosp. of Anderson & Madison County v. McKnight,* 493 N.E.2d 775, 777 (Ind.1986). There is no evidence in the record that similar concerns currently exist with regard to the professional duties of pharmacists and pharmacies. Even if such concerns could be shown, the proper showing would be made to the General Assembly.

Admittedly, our analysis includes much discussion of the medical malpractice statutes even though the statutes clearly do not protect pharmacists and pharmacies. Nevertheless, we believe that there is no better definition of what constitutes the medical care community, and therefore what groups and individuals are included as "others" within the occurrence-based statute of limitations under Indiana Code section 34–11–2–3, than the unambiguous and exclusive list of health care providers

defined in Indiana Code section 34–18–2–14. For all of these reasons, we conclude that the occurrence-based statute of limitations in Indiana Code section 34–11–2–3 does not apply to the facts and circumstances of this case.

## III. The Discovery Rule

■ Kroger and Simacek next argue that the trial court erred when it determined that regardless of the applicable statute of limitations, Hinders' Estate's claim was not barred because of the discovery rule. Kroger and Simacek's argument is based upon the assumption that the occurrence-based statute of limitations in Indiana Code section 34–11–2–3 is the applicable statute of limitations, and that the discovery rule does not apply to extend the limitation period for plaintiffs under such occurrence-based statutes of limitation when plaintiffs possess enough information within the limitation period to discover the alleged act or omission. Because we concluded in Part II of this opinion that pharmacists and pharmacies are not protected as "others" under the occurrence-based statute of limitations in Indiana Code section 34–11–2–3, we will not entertain discussion of the manner in which the discovery rule applies to the statute.

■ The proper statute of limitations for this cause is contained in Indiana Code section 34–11–2–4, which reads: "An action for: (1) injury to person or character, (2) injury to personal property; or (3) a forfeiture of penalty given by statute; must be commenced within two (2) years after that cause of action accrues." Ind. Code § 34–11–2–4 (1998). This statute of limitations, referred to as a discovery or ascertainment rule, begins to run "when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Martin v. Richey,* 711 N.E.2d 1273, 1279

(Ind.1999) (quoting *Wehling v. Citizens Nat'l Bank,* 586 N.E.2d 840, 843 (Ind. 1992)).

In our case, Hinders' niece, Peggy King, discovered that Hinders' Cardura prescription bottle contained Coumadin, a blood thinning medication, instead of Cardura, on February 15, 1999. Then on December 21, 2000, one year and nine months later, Hinders' Estate filed a complaint against Kroger and Simacek, requesting damages for medical expenses and emotional suffering based upon its allegation that Simacek negligently filled Hinders' Cardura prescription with Coumadin. Under Indiana Code section 34–11–2–4, Hinders' Estate's claim was not time barred. It had until February 15, 2001 in which to file its complaint. Therefore, the trial court did not err when it determined that the discovery rule applied to extend the period within which Hinders' Estate had to file its complaint.

### IV. Conclusion

We conclude that the occurrence-based statute of limitations contained in Indiana Code section 34–11–2–3 is not applicable to Hinders' Estate's claim because pharmacists and pharmacies are not "others" within the context of that statute. We also conclude that the applicable statute of limitations, Indiana Code section 34–11–2–4, allowed Hinders' Estate to file its complaint within two years of discovering that Hinders' injury was the result of Kroger and/or Simacek's alleged negligence, which it did when it filed its claim on December 21, 2000. We therefore affirm the trial court's denial of Kroger and Simacek's Motion for Summary Judgment.

Affirmed.

BARNES, J., and KIRSCH, J., concur.