

FILED

Jul 20 2020, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEYS FOR APPELLANTS | ATTORNEYS FOR APPELLEES |
|---|---|
| David J. Cutshaw | Kevin C. Schiferl |
| Gregory L. Laker | Maggie L. Smith |
| Gabriel A. Hawkins | Stephanie V. McGowan |
| Edward B. Mulligan V | Frost Brown Todd, LLC |
| Cohen & Malad, LLP | Indianapolis, Indiana |
| Indianapolis, Indiana | |

## IN THE
# COURT OF APPEALS OF INDIANA

Santos Cortez, Fran Cortez, and Norris Choplin Schroeder LLP

*Appellants-Plaintiffs,*

v.

Indiana University Health Inc., Sharon V. Lucich, and Elizabeth Longmuir,

*Appellees-Plaintiffs.*

July 20, 2020

Court of Appeals Case No. 19A-CT-2540

Appeal from the Marion Superior Court

The Honorable Kurt M. Eisgruber, Judge

Trial Court Cause No. 49D06-1904-CT-15514

**Brown, Judge.**

Santos Cortez ("Santos"), Fran Cortez ("Fran"), and Norris Choplin Schroeder LLP ("NCS," and collectively with Santos and Fran, "Plaintiffs") appeal the trial court's grant of a motion to dismiss filed by Indiana University Health, Inc. ("IU Health"), Sharon V. Lucich, and Elizabeth Longmuir (collectively, "Defendants"). We affirm.

## Facts as Alleged in Complaint

On April 16, 2019, Plaintiffs filed a complaint against Defendants. According to the complaint,[1] in 2012, Santos was referred to IU Health's Wound Clinic at Methodist Hospital for treatment for pressure wounds. Santos received therapy from various physical therapists employed at IU Health's Wound Clinic, including Lucich and Longmuir, on August 8, 16, 20, 23, 27, 29, and 31, 2012. Sometime between August 29, 2012, and December 2013, Lucich and/or Longmuir altered certain medical records reflecting the care and treatment Santos received at the Wound Clinic in August 2012.[2]

---

[1] We accept as true the facts alleged in Plaintiffs' complaint as Plaintiffs appeal from a trial court's grant of a pretrial motion to dismiss under Trial Rule 12(B)(1). *See State ex rel. Zoeller v. Aisin USA Mfg., Inc.*, 946 N.E.2d 1148, 1149-1150 (Ind. 2011) ("[B]ecause this is an appeal from a trial court's grant of a pretrial motion to dismiss under Trial Rule 12(B)(1), we accept as true the facts alleged in the State's complaint."), *reh'g denied*.

[2] The complaint alleged: "After completing and signing her August 16, 2012 Progress Note, Lucich and/or Longmuir intentionally and improperly altered the records by checking the box 'Other' and adding the note: '*Recommend use of sliding board until clearing buttocks c transfers*'"; "After completing and signing her August 20, 2012 Progress Note, Longmuir and/or Lucich intentionally and improperly altered the records by checking the boxes: 'Dressing/Topical Application' and 'Pressure Relief' and adding the note: '*Pressure Relief ed[ucated] wife + pt about need to do relief @ night. Report not doing 2ⁿᵈ (secondary) to not wanting to get up @ night*'."; "After completing and signing her August 23, 2012 Progress Note, Longmuir and/or Lucich intentionally and improperly altered the records by checking the boxes 'Pressure Relief' and 'Nutrition' and adding the note: '*Pressure Relief getting OOB [(out of bed)] only for MD appt and continuing to watch things done*

[3]     In 2013, Santos and Fran contacted Attorney Mike Morken regarding a potential medical malpractice action against IU Health based on the alleged: (1) failure to have physicians supervising physical therapists at its Wound Clinic; and (2) failure of the Wound Clinic to refer Santos to a physician when he showed signs and symptoms of infection. Attorney Morken requested Santos's medical records from IU Health regarding Santos's treatment at the Wound Clinic in August 2012. On December 10, 2013, IU Health produced the altered records and failed to inform him that those records had been materially altered after the fact by Lucich and/or Longmuir.

[4]     In 2014, Santos and his wife, Fran, retained NCS to pursue a medical malpractice action against IU Health. In June 2014, NCS filed a proposed complaint alleging malpractice against IU Health with the Indiana Department of Insurance. During discovery, Defendants produced the altered records.

[5]     On March 23, 2015, IU Health produced transcriptions of the altered records to Plaintiffs in advance of Lucich and Longmuir's depositions. According to the complaint, "[a]t no time during either Lucich's or Longmuir's depositions did they disclose they had altered [Santos's] medical records to include the notes about which they testified under oath." Appellants' Appendix Volume II at 53.

---

*in therapy. Nutrition. ed[ucated] need to get extra protein, vit[amin] c, etc.'*."; "After completing and signing her August 29, 2012 Progress Note, Longmuir and/or Lucich intentionally and improperly altered the records by checking the boxes 'Pressure Relief' and 'Nutrition' and adding the note: *"Pressure Relief: during transfer watching B heels at night, encouraged pressure relieving bed. Nutrition: reports eating well with extra protein, drinks boost'."* Appellants' Appendix Volume II at 46-49.

On November 26, 2018, NCS received a copy of Santos's original records produced by IU Health from Broadspire, an entity involved in Santos's worker's compensation claim with his employer. IU Health provided that copy of Santos's records to Broadspire by fax on August 29, 2012. On November 29, 2018, while inspecting the records IU Health had produced to Broadspire, Plaintiffs discovered that Broadspire's copy of the records did not include the altered handwritten notes. A few weeks later, IU Health agreed to resolve Santos and Fran's medical malpractice claim. IU Health settled the claim with the right to proceed against the Patient's Compensation Fund.

## *Procedural History*

In their complaint filed on April 16, 2019, Plaintiffs alleged: Count I, fraud; Count II, criminal counterfeiting, forgery, and violation of Crime Victims Relief Act; and Count III, tort of outrage, perjury, and violation of Ind. Trial Rule 34.[3] On June 10, 2019, Defendants filed a motion to dismiss pursuant to Ind. Trial Rules 12(B)(1) and 12(B)(6). They asserted that, "should [the trial court] find that Plaintiffs' Complaint, in whole or in part, states any claim from which relief can be granted, [the trial court] lacks subject matter jurisdiction because the claims in the Complaint sound in negligence" and the complaint is subject to the prerequisites of Indiana's Medical Malpractice Act ("MMA") and should

---

[3] With respect to their claim of perjury and violation of Ind. Trial Rule 34, Plaintiffs state in their reply brief that Defendants are correct that Indiana does not recognize a standalone cause of action for perjury or violation of Trial Rule 34 and do not challenge the dismissal of these claims.

first be presented to the medical review panel. *Id.* at 74. In their motion, Defendants requested that the court take judicial notice of the court records found in *Santos Cortez and Fran Cortez v. Indiana University Health, Inc., and Stephen W. Robertson, Commissioner, Indiana Department of Insurance, as Administrator of the Indiana Patient's Compensation Fund*, Cause No. 49D05-1706-CT-22995 ("Cause No. 995").

[8]    In Cause No. 995, the Marion Superior Court entered an April 1, 2019 order dismissing with prejudice the complaint by Santos and Fran against IU Health and Stephen W. Robertson, Commissioner, Indiana Department of Insurance, as Administrator of the Indiana Patient's Compensation Fund. The order noted that the case of *Santos Cortez and Fran Cortez v. Stephen W. Robertson, Commissioner of Insurance, State of Indiana, Indiana Department of Insurance, Patient's Compensation Fund*, Cause No. 49D04-1902-CT-6463 ("Cause No. 6463"), remained pending.[4]

---

[4] In Cause No. 6463, Santos and Fran filed a Petition for Payment of Excess Damages from the Patient's Compensation Fund in the Marion Superior Court on February 15, 2019. On October 10, 2019, Santos and Fran filed a Petition for Court Ordered Approval of Settlement Agreement and Release. *Id.* The Settlement Agreement and Release attached to the petition states:

> Notwithstanding any provision hereinabove, the parties expressly agree that this Settlement Agreement and Release is expressly limited to the claims arising from the medical care and treatment provided to Santos Cortez by the Defendants in August 2012, and expressly excludes any claims associated with Petitioners' and their attorneys' claims arising out of other conduct engaged in by Indiana University Health, Inc., and/or its employees, which claims are not governed by the Indiana Medical Malpractice Act, as those claims are alleged in *Santos Cortez, Fran Cortez and Norris Choplin Schroeder LLP, vs. Indiana University Health, Inc., Sharon V. Lucich and Elizabeth A. Longmuir*, Cause No. 49D06-1904-CT-015514, which claims are expressly reserved under this agreement.

[9]    On July 22, 2019, the trial court held a hearing on Defendants' motion to dismiss. On October 11, 2019, the court entered a ten-page order granting Defendants' motion which provides in part:

> **CONCLUSIONS OF LAW**
>
> **A. Medical Malpractice Act**
>
> * * * * *
>
> Plaintiffs' Complaint states that "[t]his case arises out of Defendants' intentional and fraudulent alteration of medical records reflecting the care and treatment they provided to Plaintiff Santos Cortez so as to defeat a medical malpractice claim that the Cortezes brought against [IU Health]" (Compl. ¶ 1). Plaintiffs explicitly link the MMA action to the activity alleged under this cause. They lay out four (4) specific instances of document alteration (Compl. ¶ 16-24) that form the core of the Complaint. Plaintiffs concede that the facts involving the altered records are rooted firmly in the MMA case, but they contend that the settlement documents released Defendants "for medical negligence only, excluding the medical records issue." (Pltffs' Motion to Strike filed July 16, 2019 ¶ 10.)
>
> Plaintiffs argue that the claims are so egregious that they should fall beyond the purview of the MMA. As a policy matter, Plaintiffs assert that the MMA is insufficient to deter future fraudulent acts and/or criminal acts of Defendants. To redress these concerns, Plaintiffs argue for the right to invoke private

---

October 10, 2019 Petition for Court Ordered Approval of Settlement Agreement and Release at 10. On October 15, 2019, the court entered an order granting the petition, approving the release, and ordering "the Commissioner, in his capacity as Administrator of the Indiana Patient's Compensation Fund . . . to authorize a cash payment from the Indiana Patient's Compensation Fund to Santos Cortez and Fran Cortez, in the amount of Nine Hundred Fifty Thousand Dollars ($950,000.00)." October 15, 2019 Order in Cause No. 6463.

rights of action in addition to the remedies already provided under the MMA.

## B. Indiana Code: Title 25

Private rights of action to deter future fraudulent behavior may be appropriate, but when possible, Indiana case law has deferred to available statutory remedies. *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182 (Ind. 2011) addresses the maintenance of health records (see I.C. § 16-39-7–Maintenance of Health Records, X-rays, and Other Tests), a matter similarly situated to this case. "Surely the skillful, accurate, and ongoing maintenance of test and treatment records bears strongly on subsequent treatment and diagnosis of patients. It is a part of what patients expect from health care providers. It is difficult to contemplate that such a service falls outside the [Medical Malpractice] Act." *Id.* at 186. A private party may not usually enforce rights under a statute designed to protect the public in general and which contains an enforcement provision. *Id.* at 187 (quoting, *Estate of Cullop v. State*, 821 N.E.2d 403 (Ind. Ct. App. 2005)[, *reh'g denied*]). "Whether a statute creates a private right of action is a question of law for the court." *Id.*

Here, Defendant IU Health was required to maintain the records, but the gravamen of the case is the alteration of health records by Defendants Lucich and Longmuir. They are health care providers subject to, not only the MMA, but to disciplinary sanctions governing providers['] licensure, registration or certification under Indiana Code Title 25. (see I.C. § 25-1-9; specifically, I.C. § 25-1-9-4(a)(1)(B) concerning disciplinary action by the governing board when a practitioner has "engaged in fraud or material deception in the course of professional services or activities"). Since the legislature has provided statutory enforcement mechanisms within both the MMA and Title 25, a private right of action does not exist against Lucich and Longmuir in this instance.

THEREFORE, Defendants' Motion to Dismiss is GRANTED as to Defendants Lucich and Longmuir.

Appellant's Appendix Volume II at 178-181. With respect to Ind. Trial Rule 12(B)(6), the court found that "under the facts and circumstances known to the parties on the date of the settlement of the Medical Malpractice Action, *res judicata* applies to all three counts alleged." *Id.* at 183. It found that alteration of evidence such as medical records constitutes spoliation and that first-party spoliation claims have been rejected. *Id.* at 184. The court's order also states:

### 3. Standing of NCS

"[S]tanding focuses on whether the complaining party is the proper person to invoke the court's power." *State ex rel. Steinke v. Coriden*, 831 N.E.2d 751, 754 (Ind. Ct. App. 2005) (quotation omitted), *trans. denied*. "The main purpose of standing is to insure [sic] that the party before the court has a substantive right to enforce the claim that is being made in the litigation." *Schulz v. State*, 731 N.E.2d 1041, 1044 (Ind. Ct. App. 2000) (citing *Pence v. State*, 652 N.E.2d 486, 487 (Ind. 1995)[, *reh'g denied*])[, *trans. denied*]. Here, NCS represented the Cortezes in the Medical Malpractice Action. (Compl. ¶ 28).

Indiana Code § 34-18-2-22 provides in pertinent part: "Derivative claims include the claim of a parent or parents, guardian, trustee, child, relative, **attorney**, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, and other similar claims." (emphasis added.) In *Indiana Patient's Compensation Fund v. Wolfe*, 735 N.E.2d 1187, 1192 (Ind. Ct. App. 2000), [*trans. denied*,] this Court determined that the statutory definition of "patient" included only "a person who receives or should have received health care." Too, "any derivative claim that might arise from the malpractice committed on the patient is included within that patient's claim." *Id.* Any

expenses or damages incurred by NCS in prosecution of the
Medical Malpractice Action is solely a matter of the contract
between NCS and the Cortezes.

THEREFORE, NCS lacks standing and is dismissed as a party.

*Id.* at 184-185. In November 2019, the court granted Defendants' motion to correct clerical error clarifying that it intended to state that IU Health, Longmuir, and Lucich were each dismissed pursuant to Ind. Trial Rule 12(B)(1).

## *Discussion*

[10] The dispositive issue is whether the trial court erred in determining it did not have subject matter jurisdiction. Plaintiffs cite *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182 (Ind. 2011), and state that, if their claims were simply predicated upon the destruction of medical records, then Defendants' assertion that they must present their claims to a medical review panel prior to bringing suit would be accurate. Appellants' Brief at 24. They argue that they do not contend Defendants simply failed to maintain Santos's records, but rather that Defendants "proffered altered medical records in conjunction with perjured testimony in an attempt to support a contrived contributory negligence defense." *Id.* They assert that, "[i]n contrast to the mere maintenance of medical records, the fraudulent alteration of records and facilitation of perjury have nothing to do with 'curative or salutary conduct' or the 'exercise of professional expertise, skill, or judgment' and are, instead, actions decidedly unrelated to healthcare," the MMA is not applicable, and the trial court had

subject matter jurisdiction over their claims. *Id.* They also argue that "policy considerations also favor reversal because, if this Court affirms the trial court, nothing will deter other unscrupulous providers from perpetrating similar frauds." *Id.* at 28.

[11] Defendants argue that Plaintiffs' claims fall within the purview of the MMA and they consequently must bring their claims before the medical review panel and the trial court lacks subject matter jurisdiction until that condition precedent has been satisfied. They assert Plaintiffs' attempt to distinguish *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182 (Ind. 2011), fails because the alleged acts all stem from the maintenance of the medical records which the Indiana Supreme Court has declared falls within the definition of malpractice.

[12] In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion but also any affidavits or evidence submitted in support. *GKN Co. v. Magness*, 744 N.E.2d 397, 400 (Ind. 2001). The standard of appellate review for such a motion depends on what occurred in the trial court, and on "(i) whether the trial court resolved disputed facts; and (ii) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a 'paper record.'" *Id.* at 401. We review de novo a trial court's ruling on a motion to dismiss where, as here, the facts before the court are disputed and the trial court rules on a paper record. *Id.* Under such circumstances a court of review is in as good a position as the trial court to determine whether the court has subject matter jurisdiction. *Id.* Although the trial court held a hearing on the motion to dismiss, the hearing

was simply an oral argument as the parties presented no evidence and no witnesses were sworn. Accordingly, we apply a de novo standard of review based on the paper record before us.

[13] The MMA requires the presentation of the proposed complaint to a medical review panel before an action may be commenced in a court in Indiana. *Metz as Next Friend of Metz v. Saint Joseph Reg'l Med. Ctr.-Plymouth Campus, Inc.*, 115 N.E.3d 489, 494 (Ind. Ct. App. 2018) (citing Ind. Code § 34-18-8-4). "Essentially, the [MMA] grants subject matter jurisdiction over medical malpractice actions first to the medical review panel, and then to the trial court." *Id.* (quoting *H.D. v. BHC Meadows Hospital, Inc.*, 884 N.E.2d 849, 853 (Ind. Ct. App. 2008), *reh'g denied*, *trans. denied*; and citing *B.R. ex rel. Todd v. State*, 1 N.E.3d 708, 713 (Ind. Ct. App. 2013) ("Simply said, the [MMA] grants subject matter jurisdiction over medical malpractice actions first to the medical review panel, and then to the trial court."), *trans. denied*). *See also Eads v. Cmty. Hosp.*, 932 N.E.2d 1239, 1246 (Ind. 2010) (holding that the MMA "requires that claims for medical malpractice that are recognized under tort law and applicable statutes be pursued through the procedures of the MMA") (citing *Chamberlain v. Walpole*, 822 N.E.2d 959, 963 (Ind. 2005)).

[14] The MMA defines "malpractice" as "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." Ind. Code § 34-18-2-18. Ind. Code § 34-18-2-22 provides:

"Patient" means an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider. Derivative claims include the claim of a parent or parents, guardian, trustee, child, relative, attorney, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, and other similar claims.

The Indiana Supreme Court has held that "[t]he effect of this provision is merely to require that any person who has a 'derivative claim' for medical malpractice follow the requirements of the MMA in filing a proposed complaint with the Insurance Commissioner, etc." *Chamberlain*, 822 N.E.2d at 963. "Health care" is "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Ind. Code § 34-18-2-13.

[15] The Indiana Supreme Court has held:

Indiana courts understand the [MMA] to cover "curative or salutary conduct of a health care provider acting within his or her professional capacity," *Murphy v. Mortell*, 684 N.E.2d 1185, 1188 (Ind. Ct. App. 1997), [*trans. denied*,] but not conduct "unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment." *Collins v. Thakkar*, 552 N.E.2d 507, 510 (Ind. Ct. App. 1990)[, *trans. denied*].

*Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 185 (Ind. 2011). "To determine whether the [MMA] is applicable, the court looks to the substance of

a claim." *Id.* (citing *Van Sice v. Sentany*, 595 N.E.2d 264 (Ind. Ct. App. 1992)). "[R]egardless of what label a plaintiff uses, claims that boil down to a 'question of whether a given course of treatment was medically proper and within the appropriate standard' are the 'quintessence of a malpractice case.'" *Id.* (quoting *Van Sice*, 595 N.E.2d at 267). "By contrast, to fall outside the Malpractice Act a health care provider's actions must be demonstrably unrelated to the promotion of the plaintiff's health or an exercise of the provider's professional expertise, skill, or judgment." *Id.* at 186.

[16]  We find *Howard Reg'l Health Sys. v. Gordon* instructive. In that case, Lisa Gordon was admitted to Howard County Community Hospital in labor. *Id.* at 184. Dr. Richard A. Gard had provided Lisa's prenatal care. *Id.* He delivered Jacob Gordon by caesarian section after determining the baby was in a breech position, on January 7, 1999. *Id.* Sometime thereafter it became apparent that Jacob suffered from numerous serious disorders. *Id.* The Gordons believed that Jacob's conditions may have been caused by substandard medical care at the time of his birth. *Id.* Counsel for Lisa first requested medical records from the Hospital in December 2003 and then in 2004. *Id.* Counsel made additional requests after it became apparent there were gaps in the medical records turned over. *Id.*

[17]  In 2005, the Gordons filed a complaint for damages with the Indiana Department of Insurance as required by the MMA. *Id.* The complaint named Howard Regional as the sole defendant and alleged that one of the hospital nurses did not conform to the applicable standard of medical care, causing

damage to Jacob. *Id.* In March 2006, the Gordons filed a motion to compel discovery. *Id.* The Hospital filed affidavits dated June 5, 2006, stating that some of the records could not be located. *Id.* The missing records included nursing and narrative notes. *Id.*

[18] The Gordons filed an amended complaint against the Hospital, named three additional defendants, and included in part Count I, medical negligence against Howard Regional, and Count II, third-party spoliation of evidence against Howard Regional. *Id.*

[19] The Gordons moved for partial summary judgment against Howard Regional with respect to Count II, the third-party spoliation claim. *Id.* In support, they tendered the affidavit of a neonatologist stating she could not determine whether the standard of care was met because of the missing medical records. *Id.* at 184-185. After a hearing, the trial court granted the Gordons partial summary judgment and authorized an interlocutory appeal by Howard Regional. *Id.* at 185. Howard Regional appealed, and another panel of this Court affirmed. *Id.*

[20] On transfer, the Indiana Supreme Court addressed two threshold questions: whether the Gordons' spoliation claim fell within the general scope of the MMA and whether Indiana's statute on maintenance of health records statute created a private right of action. *Id.* The Court held:

> Splitting out separate actions by a provider has usually been held contrary to the Act. In determining that both the activity of credentialing and medical malpractice should be reviewed

together under the Act, the Court of Appeals explained the landscape well:

> Viewed from the historical perspective we believe the conclusion is inescapable that our General Assembly intended that all actions the underlying basis for which is alleged medical malpractice are subject to the act. [T]he obvious purpose of the act is to provide some measure of protection to health care providers from malpractice claims, and to preserve the availability of the professional services of physicians and other health care providers in the communities and thereby protect the public health and well-being[.]

*Winona Mem'l Hosp., LP v. Kuester*, 737 N.E.2d 824, 828 (Ind. Ct. App. 2000) (quoting *Sue Yee Lee v. Lafayette Home Hosp., Inc.*, 410 N.E.2d 1319, 1324 (Ind. Ct. App. 1980)).[5]

*Id.* at 186.

[21]  With that background in mind, the Court held:

> The Gordons' underlying claim in Count II alleges medical malpractice because the "[m]aintenance of health records by providers" is so closely entwined with health care and because

---

[5] The Court included a footnote which stated:

> Parents contended their trial court complaint represented an independent action for damages outside the purview of the Act. The parents believed their claim for the loss of services of their child and for medical expenses was outside the Act because they were never patients of the defendant health care providers, either under the statutory definition or under recognized definitions of the term, and they were not suing in representative capacity. The court held the parents' right of action was derived from a claim of medical malpractice and thus covered by the Act. *Sue Yee Lee*, 410 N.E.2d at 1324.

952 N.E.2d at 186 n.2.

records in general are so important to a medical review panel's assessment of whether the appropriate standard of care was met. Ind. Code §§ 16-39-7-1, 34-18-10-22(a). The Gordons rightly acknowledge how important health care records are for "the nature and quality of the health care provided, for billing purposes, and *peer review*." (Appellee's Br. at 16.) (emphasis added)[.] Surely the skillful, accurate, and ongoing maintenance of test and treatment records bears strongly on subsequent treatment and diagnosis of patients. It is a part of what patients expect from health care providers. It is difficult to contemplate that such a service falls outside the Act.

*Id.*

[22]     The Court then addressed "the Gordons' contention that the statute on maintenance of health records creates a private right of action separate from the" MMA and the Gordons' argument that subsection (d) "implicitly recognizes that there is civil liability on the part of a healthcare provider if it violates Ind. Code § 16-39-7-1."[6] *Id.* The Court concluded that "neither the

---

[6] Ind. Code § 16-39-7-1 is titled "Maintenance of health care records by providers" and provides:

> (a) As used in this section, "provider" means the following:
> * * * * *
> > (8) A physical therapist.
> * * * * *
> > (13) A hospital or facility licensed under IC 16-21-2 or IC 12-25 or described in IC 12-24 or IC 12-29.
> (b) A provider shall maintain the original health records or microfilms of the records for at least seven (7) years.
> (c) A provider who violates subsection (b) commits an offense for which a board may impose disciplinary sanctions against the provider under the law that governs the provider's licensure, registration, or certification under this title or IC 25.
> (d) A provider is immune from civil liability for destroying or failing to maintain a health record in violation of this section if the destruction or failure to maintain the health record occurred in connection with a disaster emergency as declared by the governor under IC 10-

rules of statutory construction nor the history of the enactment lead to the idea that Section 1(d) confers a private remedy for the Gordons." *Id.* at 188.

[23] The Court then discussed first-party and third-party spoliation claims.[7] *Id.* The Court clarified that first-party spoliation refers to the spoliation of evidence by a party to the principal litigation and third-party spoliation refers to spoliation by a non-party. *Id.* The Court observed that it answered two certified questions in *Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 350 (Ind. 2005), and limited its answers in that case to first-party spoliation. *Id.* The Court held:

> Our decision in *Gribben* to forgo recognizing a distinct cause of action for first-party spoliation likewise comports with the approach of many courts that have instead addressed such allegations in the underlying litigation through sanctions, including adverse inference instructions and other mechanisms. *See Cedars-Sinai Med. Ctr. v. Superior Court (Bowyer)*, 18 Cal.4th 1, 74 Cal.Rptr.2d 248, 954 P.2d 511, 517 (1998) ("[T]here are a number of nontort remedies that seek to punish and deter the intentional spoliation of evidence. Chief among [which] is the evidentiary inference that evidence which one party has destroyed or rendered unavailable was unfavorable to that party."); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958, 960-63 (9th Cir. 2006) (affirming dismissal against party for bad faith destruction of relevant evidence); *cf.* Ind. Trial Rule 37 (a court

---

14-3-12 or other disaster, unless the destruction or failure to maintain the health record was due to negligence by the provider.

[7] "Spoliation consists of '[t]he intentional destruction, mutilation, alteration, or concealment of evidence, usually a document. If proved, spoliation may be used to establish that the evidence was unfavorable to the party responsible.'" *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000) (quoting BLACK'S LAW DICTIONARY 1409 (7th ed. 1999)).

may sanction a party, including dismissal of a claim or defense, for failing to comply with a discovery order).

*Id.* at 189. The Court further held:

Our decision in *Gribben* rested partly on similar analysis. In declining to recognize first-party spoliation claims we concluded,

> Notwithstanding the important considerations favoring the recognition of an independent tort of spoliation by parties to litigation, we are persuaded that these are minimized by existing remedies and outweighed by the attendant disadvantages. We thus determine the common law of Indiana to be that, if an alleged tortfeasor negligently or intentionally destroys or discards evidence that is relevant to a tort action, the plaintiff in the tort action does not have an additional independent cognizable claim against the tortfeasor for spoliation of evidence under Indiana law.

*Gribben*, 824 N.E.2d at 355. We did acknowledge that fairness and integrity of outcome and deterrence might require a separate tort remedy against persons who are not parties to the principal litigation, but as the certified question did not necessitate examination of third-party spoliation, we did not address it further.

The following year in *Glotzbach v. Froman*, we first considered whether an employee could sue his employer in tort, outside the Worker's Compensation Act, for loss of evidence about his injury on the job, evidence said to be needed for litigation against the maker of a pump that exploded at the worksite. 854 N.E.2d 337 (Ind. 2006). We concluded the disadvantages in first-party spoliation militated against recognizing a third-party claim in that setting:

Proving damages in a third-party spoliation claim becomes highly speculative and involves a lawsuit in which the issue is the outcome of another hypothetical lawsuit. The jury must somehow find all the elements of a product liability case, immediately determining whether a product defect caused the injury, as opposed to inadequate maintenance, or other intervening events. The jury would be asked to determine what the damages would have been had the evidence been produced and what the collectibility of these damages would have been. We think this exercise often could properly be described as "guesswork."

*Id.* at 341 (citing *Petrik v. Monarch Printing Corp.*, 150 Ill.App.3d 248, 103 Ill.Dec. 774, 501 N.E.2d 1312, 1320 (1986)).

Necessarily working from the background of *Gribben* and *Glotzbach*, and our observation that fairness and integrity of outcome might sometime require recognizing such a claim, the Gordons urge that theirs is an instance warranting an independent tort for third-party spoliation. The theory runs like this: when it comes time to prove the Gordons' claim against Dr. Gard, the Hospital's loss of medical records hinders their ability to pursue a claim against Dr. Gard. Thus, they say, the Hospital is a third party against whom a separate tort for spoliation is needed. The Hospital, of course, is also a first-party defendant.

We conclude that splitting up the defendants, and the counts against them, blurs the distinction between actual defendants and others who may possess evidence but are not parties to the litigation. What the Gordons' case presents is really a claim for first-party spoliation, carrying the same advantages and disadvantages we weighed in *Gribben* and *Glotzbach*.

*Id.* at 190.

[24] The Court observed that the MMA "generally requires that actions for medical negligence against health care providers must first be submitted to, and an opinion given by, a medical review panel before commencing an action in court." *Id.* at 191 (citing Ind. Code § 34-18-8-4). The Court held that the Hospital was entitled to summary judgment on the claim of spoliation because the Court declined to recognize the count as representing a separate cause of action. *Id.*

[25] Based upon the Indiana Supreme Court's opinion in *Gordon*, we conclude that the maintenance of health care records in this case including their alteration prior to the filing of the proposed complaint alleging malpractice against IU Health fall within the scope of the MMA. Plaintiffs did not submit these claims to a medical review panel. Accordingly, we affirm the trial court's grant of Defendants' motion to dismiss.[8]

[26] Affirmed.

Najam, J., and Kirsch, J., concur.

---

[8] Because we affirm on the basis of Ind. Trial Rule 12(B)(1), we need not address Plaintiffs' arguments regarding Ind. Trial Rule 12(B)(6).